UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DEBRA L. VIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 5:14-cv-01094-JHE |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | |

**MEMORANDUM OPINION**[1]

Plaintiff Debra L. Via ("Via") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").[2] (Doc. 1). Via timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

Via was a fifty-eight year old female at the time of the Administrative Law Judge's ("ALJ") decision. (Tr. 24). Via completed high school and is able to communicate in English. (Tr. 24). Via previously worked as a home healthcare aid and a lunchroom attendant. (Tr. 23).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 14).

[2] Although Via apparently filed an application for Supplemental Security Income, (*see* tr. 17), it is not in the record.

Via filed her applications for a period of disability, DIB, and SSI on February 15, 2011 and July 27, 2012, alleging an initial onset date of July 13, 2010. (Tr. 17). The Commissioner initially denied Via's application, and Via requested a hearing before an ALJ. (Tr. 62-63). After a hearing, the ALJ denied Via's claim on September 27, 2012. (Tr. 25). Via sought review by the Appeals Council, but it declined her request on February 26, 2014. (Tr. 1-4). On that date, the ALJ's decision became the final decision of the Commissioner. On June 10, 2014, Via initiated this action. (*See* doc. 1).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528,

---

[3]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R.

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Via last met the insured status requirements of the Social Security Act on December 31, 2014, and that Via did not engage in substantial gainful activity from the alleged onset date of July 13, 2010.[5] (Tr. 19). At Step Two, the ALJ found Via has the following severe impairments: degenerative disc disease status post-surgery and scleroderma. (Tr. 20). At Step Three, the ALJ found Via does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

Before proceeding to Step Four, the ALJ determined Via's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Via has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with specified limitations. (Tr. 20). Those specified

---

[5] The ALJ found that Via worked after the alleged disability onset date, but this work activity did not rise to the level of substantial gainful activity. (Tr. 19).

4

limitations are that she can only perform occasional crouching, stooping, and operation of foot controls with no ladders, and frequent, but not constant, use of the bilateral upper extremities. (*Id.*).

At Step Four, the ALJ determined, through the date last insured, Via is unable to perform any past relevant work. (Tr. 23). At Step Five, the ALJ determined, based on Via's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Via could perform. (Tr. 24). Therefore, the ALJ determined Via has not been under a disability, as defined in the Social Security Act, and denied Via's claim. (Tr. 24-25).

**V. Analysis**

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Via failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Via challenges the ALJ's decision on two specific grounds: (1) the ALJ failed to properly evaluate the credibility of her testimony of disabling symptoms consistent with the Eleventh Circuit pain standard; and (2) the ALJ failed to properly articulate good cause for according less weight to the opinion of her treating physician. (Doc. 12 at 4-12). Neither of these arguments has merit.

**A. The ALJ Properly Evaluated the Credibility of Via's Testimony of Disabling Symptoms Consistent with the Eleventh Circuit Pain Standard**

Via contends the ALJ did not properly assess her credibility consistent with the Eleventh Circuit Pain Standard, but instead chose select notations to support her findings and ignored the medical record as a whole. (Doc. 12 at 4-9). The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. Id. However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. See *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, see Foote, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. App'x. 287, 288 (11th Cir. 2009).

Here, the ALJ found Via's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," thus satisfying the initial requirements of the pain standard. (Tr. 21). Nevertheless, the ALJ then found that Via's "statements concerning intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [] residual functioning capacity assessment." (*Id.*). The ALJ's finding

6

that Via's testimony was "less than credible," (tr. 23), is supported by substantial evidence and she articulated adequate reasons for discrediting Via's subjective complaints.

The ALJ specifically referenced treating notes indicating Via consistently complained of back pain. (Tr. 21). The ALJ further acknowledged the findings in the September 9, 2010 lumbar MRI, the December 14, 2010 back surgery, and the findings of the February 2011 lumbar MRI corroborated Via's complaints of back pain. (Tr. 21, 160, 305, 307-08). The ALJ then partially credited Via's complaints concerning her ability to lift, crouch, stoop, and operate foot controls after considering the findings of the April 21, 2011 consultative examination. (tr. 22, 339-41). The ALJ properly concluded that during the consultative examination, Via had only a mildly antalgic gait, reduced strength in her lower extremities, and pain upon range of motion in the lumbar spine. (Tr. 22, 339-41). The ALJ properly accommodated these restrictions by limited Via to occasional crouching, stooping, operating foot controls, and never climbing ladders. (Tr. 20, 22).

The ALJ also credited Via's complaints of fingertip pain, decreased grip strength, and increased hand cramping from scleroderma. (Tr. 22). The ALJ said she considered the March 8, 2010 treatment note wherein laboratory tests confirmed scleroderma. (Tr. 22, 145-48). Because of this finding, the ALJ limited Via to light work but found she could not constantly use her upper extremities. (Tr. 22).

The ALJ then set out the inconsistent evidence that detracted from Via's allegations she was further limited. (Tr. 22-23). Relating to her scleroderma, the ALJ explained that the March 17, 2011 nerve conduction study returned normal. (Tr. 22, 329-31). Additionally, the ALJ considered the March 3, 2011 treatment note from Dr. Martin Jones, Via's treating surgeon, showing that Via did not have any significant nerve root compression. (Tr. 22, 300). Moreover,

an April 21, 2011 consultative examination by Dr. Marlin Gill revealed Via had normal and symmetrical appearing upper extremities, full range of motion of her joints, normal use of her hands and arms, the ability to perform a full squat and arise, and the ability to heel-toe walk. (Tr. 22, 339-41).

The ALJ also addressed Via's allegations concerning her treatment regime. (Tr. 22). The ALJ concluded that the medical evidence did not corroborate Via's allegation that she needs to lie down with her feet elevated every day. (Tr. 22, 45). The ALJ explained, the February 2011 lumbar MRI showed Via had only very mild left lateral recess encroachment. (Tr. 22, 307). Similarly, the ALJ noted that Via does not allege, and the medical record does not show, any side effects from medication. (Tr. 22). Finally, the ALJ acknowledged that Via also said, although she has received epidural steroid injections, she uses heating pads and ice packs to alleviate her pain. (Tr. 22, 45). The ALJ properly supported her conclusion that Via's medication regiment and treatment history do not support the presence of impairments that further limit her.

As for Via's daily activities, the ALJ compared Via's allegations throughout the record. (Tr. 22). The ALJ noted that, although Via claimed to perform only limited activities of cooking and shopping, her daily activities could not be objectively verified and that it was difficult to attribute a degree of limitation to her medical condition in light of the relatively weak medical evidence and the fact Via worked for a time after her alleged onset date. (Tr. 22, 108). Via's ability to work after the alleged onset date provides further evidence undermining her allegations of disability limitations.

The ALJ considered the medical records and opinions from doctors who treated and examined Via, the opinion of Via's therapist, as well as the opinion from the state agency doctor

who reviewed the evidence. (Tr. 22-23). In addition to Dr. Gill's April 21, 2011 examination, the ALJ also relied, in part, on the April 26, 2011 state agency consultative report from Dr. Richard Whitney. (Tr. 23). Dr. Whitney opined Via could occasionally lift twenty pounds and frequently lift ten pounds, could stand and/or walk about six hours, and had no pushing and pulling limitations. (Tr. 343). Dr. Whitney also opined Via was limited to occasional postural activities, except she could never climb ladders, ropes, or scaffolds. (Tr. 344). Dr. Whitney opined Via had no manipulative limitations, but should avoid concentrated exposure to temperature extremes and avoid all exposure to hazards. (tr. 346). Noting Dr. Whitney was a consultative examiner, the ALJ proper accorded his opinion some weight. (Tr. 23).

The ALJ also gave some weight to the March 29, 2011 medical source statement from Marla Hodges, Via's physical therapist. (Tr. 23, 332-36). According to Hodge, Via can lift twenty pounds floor to waist. (Tr. 23, 443). The ALJ concluded this opinion was consistent with the objective medical evidence. (Tr. 23). However, the ALJ found that the MRI findings and the Social Security Administration's definition of medium work did not support Hodges' conclusion that Via could perform at the "medium work classification level." (Tr. 23, 332).

Based on this evidence, the ALJ properly applied the Eleventh Circuit pain standard and substantial evidence supports her decision to discredit Via's subjective testimony of disabling pain and her RFC assessment. .

**B. The ALJ Properly Articulated Good Cause for According Less Weight to the Opinion of Via's Treating Physician**

Via contends the Commissioner's decision should be reversed because the ALJ failed to properly articulate good cause for according less weight to the opinion of her treating physician, Dr. Martin Jones. (Doc. 12 at 10-12). Specifically, Via first points to two of Dr. Jones' opinions where he states Via is unable to work. (Doc. 12 at 10, citing tr. 301, 304). On both December

9

29, 2010 and March 3, 2011, Dr. Jones indicated on Via's "Treatment/Work Status Form" that "Patient unable to return to work at this time." (Tr. 301, 304). Via also points to the portion of the decision where the ALJ gave only "little weight" to Dr. Jones' March 3, 2011 opinion finding Dr. Jones' "treatment notes fail to support it. (Doc. 12 at 11, citing tr. 23).

As a general rule, the opinion of a treating physician, such as Dr. Jones, "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate his reasons. *Id.* However, opinions on whether a claimant is disabled are "not medical opinions . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. 404.1527(d); *see* SSR 96-5p, 1996 WL 374183, at *2. Opinions on issues reserved for the Commissioner (e.g., the opinion that a claimant is disabled), even when offered by a treating source, "are never entitled to controlling weight or given special significance." SSR 96-5p, 1996 WL 374183, at *2. "Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id.* Thus, although a physician's opinion about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483 , 486 (11th Cir.

2012).

Dr. Jones indicated he believed Via could not return to work "at this time" on July 23, 2010, prior to her surgery, and again on December 29, 2010, immediately after Via's surgery. (Tr. 301, 307). Although the ALJ did not specifically reference these opinions, remanding the case on this ground is not warranted. Whether a claimant can work or is disabled is an issue reserved to the Commissioner and is not entitled to controlling weight. *See* SSR 96-5p, 1996 WL 374183, at *2. Furthermore, it is understandable why Dr. Jones would indicate that Via could not return to work prior to and immediately after surgery. Instead, the ALJ appropriately evaluated Dr. Jones' March 3, 2011 opinion and the collective evidence to consider whether the December 2010 surgery helped to alleviate Via's symptoms, caused additional symptoms, and/or enabled her to return to work. (Tr. 23). The ALJ expressly disagreed with Dr. Jones' March 3, 2011 opinion Via could not return to work at that time. (Tr. 23). The ALJ explained that Dr. Jones' treatment notes failed to support his opinion. (Tr. 23, 300). In doing to, the ALJ cited results from the February 2011 MRI showing no evidence of nerve root compression and Dr. Jones' indication that "everything to me looks ok." (Tr. 23, 300, 307). Substantial evidence supports the ALJ's decision to give little weight to Dr. Jones' March 3, 2011 opinion, and the ALJ did not err by not specifically referencing Dr. Jones' opinions on ultimate issues reserved to the Commissioner.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Via's claim for a period of disability, DIB, and SSI is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 24th day of September 2015.

                                                **JOHN H. ENGLAND, III**
                                                UNITED STATES MAGISTRATE JUDGE